**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 10-04588-DD |
| Om Shivai, Inc., | Chapter 11 |
| Debtor. | **ORDER DENYING CONFIRMATION AND DISMISSING CASE** |

This matter is before the Court for a hearing on Om Shivai, Inc.'s ("Debtor") Small Business Disclosure Statement ("Disclosure Statement") and Small Business Plan ("Plan"), both filed February 16, 2011; the United States Trustee's ("UST") Motion to Dismiss ("Motion") filed February 14, 2011 and joined by First Citizens Bank & Trust Co. ("Creditor") on February 15, 2011, and Creditor's Motion for Relief from Stay ("362 Motion") filed February 16, 2011. An Order Conditionally Approving Disclosure Statement was entered February 18, 2011. Objections to Confirmation of Debtor's Plan were filed by UST and Creditor on March 22, 2011. Objections to UST's Motion and Creditor's 362 Motion were filed by Debtor on March 6, 2011 and March 2, 2011, respectively. A hearing was held on these matters on March 29, 2011. Based on the findings of fact and conclusions stated on the record at the hearing and set forth in further detail below, approval of Debtor's Disclosure Statement and confirmation of Debtor's Plan are denied and Debtor's case is dismissed.

**FINDINGS OF FACT**

Debtor filed for chapter 11 protection on June 29, 2010 and designated itself as a small business debtor in its petition. Debtor owns and operates a Days Inn motel franchise in Richburg, South Carolina. Debtor purchased the 27 room motel in April 1999. Debtor indicates in its Disclosure Statement that its business went well until 2001, when the economy began to

suffer. Debtor's monthly operating reports from July 2010 to the present show that Debtor had positive net income in only four of the past eight months.

Debtor's Schedule D shows secured debt in the total amount of $1,137,385.68. This includes a mortgage with Creditor in the approximate amount of $1,083,585.68 and two tax liens with Chester County and the South Carolina Department of Revenue. Debtor's Schedule F shows unsecured debt of $84,503.41, and Schedule E shows priority debt of $2,000 owed to the IRS.

Debtor's Plan proposes to pay First Citizens' claim over a 120 month period at 6 percent interest, with monthly payments of $3,706.91. At the end of the 120 month period, a balloon payment will be due. Debtor proposes to pay Chester County's claim over a 60 month period at 5.25 percent interest. Debtor will pay the $75,624.85 owed to Chester County in monthly installments of $1,430. Debtor proposes to pay the $800 claim of the South Carolina Department of Revenue over a 60 month period at 5.25 percent. This debt will be paid in monthly installments of $15.12 per month. Debtor's priority debt to the IRS will be paid over a 60 month period at 5.25 percent, in monthly installments of $37.81. Proposed payments to all other classes are minimal.

Since the beginning of the case, Debtor's monthly operating reports show a total of only $1,000 in repair expenses. Mr. Desai, a principal for the Debtor, testified that the repair expenses are low because he does much of the needed maintenance and repairs himself. Despite this, Debtor's motel is currently in need of approximately $95,000 for repairs. These repairs include the replacement of the mattresses in all guest rooms, removal of rust from stairwells, and replacement of a fence on the motel's grounds. While Mr. Desai's testimony regarding the source of funds to make these repairs was somewhat unclear, it appears that Mr. Desai has

obtained agreement from several friends to contribute $35,000 to the motel in thirty to sixty days. Mr. Desai stated that any additional funds needed would come out of Debtor's income.

Debtor's motel is located near an exit off of Interstate 77. There are at least five other motels at the same exit.[1] Testimony established that Debtor's occupancy is generally between 26 and 28 percent, and that this figure is much lower than the other five motels. Debtor's motel is also older than the majority of the other motels.

## CONCLUSIONS OF LAW

### I. Debtor's Disclosure Statement and Plan

11 U.S.C. § 1129 sets forth several requirements that must be met before a court can confirm a debtor's chapter 11 plan. A court must undertake an independent evaluation of a debtor's plan to ensure these requirements are met, even in the absence of objection. *In re Gyro-Trac (USA), Inc.,* 441 B.R. 470, 477 (Bankr. D.S.C. 2010) (citing *In re Landscaping Servs., Inc.*, 39 B.R. 588, 590 (Bankr. E.D.N.C. 1984); *In re Econ. Cast Stone Co.*, 16 B.R. 647, 650 (Bankr. E.D. Va. 1981)). The proponent of the plan, the debtor, bears the burden of showing that the plan satisfies all the elements of section 1129. *Id.* The debtor must make this showing by a preponderance of the evidence. *Id.* (citing *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D. Va. 2000)). If the court finds that the debtor has met his burden, the court must confirm the debtor's plan. *Id.*

UST objects to confirmation of Debtor's Plan largely based on the fact that Debtor has not shown an ability to fund its Plan. Creditor's Objection sets forth numerous problems with Debtor's Plan, including improper classification of claims, violation of the absolute priority rule, and lack of feasibility. Section 1129(a)(11) sets forth a requirement that in order to be

---

[1] When questioned about how many motels were at the exit, Mr. Desai seemed uncertain. He stated that there might be more than five, as reports on motels might not show certain smaller or "mom and pop" motels.

confirmed, a debtor's plan must be feasible. That section states that the court may only confirm a plan if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). This Court has recently stated that in order to satisfy section 1129(a)(11), success of a debtor's plan does not have to be guaranteed; instead, the plan must "'present a workable scheme of organization and operation from which there may be a reasonable expectation of success.'" *Gyro-Trac*, 441 B.R. at 482–83 (quoting *In re Walker*, 165 B.R. 994, 1004 (E.D. Va. 1994)). The important consideration is whether, given the debtor's situation, the "things which are to be done after confirmation can be done as a practical matter." *Id.* (quoting *In re Walker*, 165 B.R. 994, 1004 (E.D. Va. 1994)). In assessing feasibility, several factors may be relevant, including:

> The reorganized debtor's capital structure, the debtor's projected earning power, the current state of the economy, the ability of management and the likelihood that the current management will continue to work for the reorganized debtors, and any other factors the court finds relevant to the success of the debtor's plan.

*Id.* (citing *In re Radco Props., Inc.*, 402 B.R. 666, 679 (Bankr. E.D.N.C. 2009)).

Debtor's Plan is not feasible. Debtor's monthly operating reports and the testimony at the hearing indicate that Debtor has positive net income only in certain months, and when Debtor does have positive net income, it is minimal.[2] In spite of this, Debtor proposes through its Plan to pay significantly more to its creditors than it has shown the ability to pay in the past. Debtor also indicated that it has recently begun advertising in coupon books, which will cost $695 each quarter. The majority of Debtor's monthly operating reports show no advertising expense; thus, this will be an added expense going forward.

---

[2] Debtor's monthly operating reports show positive net income for July 2010, October 2010, December 2010, and February 2011. These amounts were $7,350.78, $428.40, $731.00, and $2,087.21, respectively.

As noted above, an appraisal of Debtor's motel indicated that it needs at least $95,000 in repairs. Debtor's monthly operating reports show only minimal repair expenses, and Debtor does not appear to have any funds allocated to pay for these repairs in the future. Mr. Desai stated that he would be receiving around $35,000 from friends in the next thirty to sixty days, and apparently intends to use this money, along with other income from operations, to pay for the repairs. This does not explain how Debtor can afford to make all of the needed repairs.

Debtor's motel is in competition with at least five other motels, and the motel is older than at least three of the motels located at the same exit. Debtor's motel is currently operating at a lower occupancy rate than the other motels. Further, Debtor's motel is in need of significant repairs. Testimony at the confirmation hearing was that passers-by sometimes stopped and, after seeing the rooms, journeyed on to other motels. Without repairs, it is unlikely that Debtor can improve its position with respect to the other motels in the area, and without an improvement in occupancy rate, Debtor will not succeed in performing its Plan.

Mr. Desai appeared optimistic that the economy would improve and in turn, Debtor's business would improve, providing Debtor with additional income. However, sheer optimism and hopefulness, without more, is not sufficient to support a finding of feasibility. *See Gyro-Trac*, 441 B.R. at 483 ("It is not enough for a debtor to exhibit '[s]incerity, honesty and willingness' or make 'visionary promises' with respect to its plan.") (quoting *In re Walker,* 165 B.R. 994, 1004 (E.D. Va. 1994)) (alteration original). Debtor's only hope of success is an improvement in the economy and an infusion of capital. Because this is not sufficient to support a finding that Debtor's Plan is feasible, the Court finds that Debtor's Plan cannot be confirmed because it is not feasible.

The Court notes that there are additional issues which would likely cause confirmation of Debtor's Plan to be denied, including the gerrymandering of classes. However, it is unnecessary to address those issues here, as the Court has found there is no basis to conclude that Debtor's Plan is feasible and therefore, it cannot be confirmed. Approval of Debtor's Disclosure Statement and confirmation of Debtor's Plan is denied.

## II. Motion to Dismiss

UST's Motion and Creditor's joinder to that Motion are based on section 1112(b)(1) and 1112(b)(4)(A) and (J). Section 1112(b)(1) states:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Section 1112(b)(4) sets forth a nonexclusive list of situations that constitute "cause." Subsection (A) states that cause includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and subsection (J) states that cause exists upon a debtor's "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court."

In Debtor's case, the Court finds that cause for conversion or dismissal exists under section 1112(b)(4)(A). Section 1112(b)(4)(A) requires the Court to engage in a two-step analysis. First, the Court must find whether, "post-petition, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset values." *In re Landmark Atlantic Hess Farm, LLC*, No. 10-24656-DK, 2011 WL 831724, at *4 (Bankr. D. Md. Mar. 3, 2011). *See also In re Westgate Props., Ltd.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010) (citing *In re Schriock Constr., Inc.,* 167 B.R. 569, 575 (Bankr. D.N.D. 1994)). Second, the court must

find that the debtor has no reasonable chance of rehabilitation. This prong of the analysis requires more than simply an ability to reorganize; rather, it requires a showing that the debtor has sufficient business prospects to "re-establish [itself] on a firm, sound basis." *Landmark Atlantic*, 2011 WL 831724, at *5, n.19 (quoting *In re Westgate Props., Ltd.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010)).

With respect to the first prong of the analysis, as set forth in detail above, Debtor's monthly operating reports show positive net income in only four of the past eight months, yet its proposed Plan increases Debtor's monthly obligations; Debtor's motel has very low occupancy rates and is in need of significant repairs, which Debtor has little or no income to fund; and Debtor's future appears to be entirely reliant on the improvement of the economy. Overall, during the eight month period, Debtor has experienced a net loss of $3,856.03. Under these circumstances, there is a continuing loss to the estate and therefore the first prong of the section 1112(b)(4)(A) analysis is met. With respect to the second prong, it appears that Debtor has no reasonable likelihood of rehabilitation. Debtor has been operating at a very low occupancy rate, and absent some influx of funds for repairs or some unexpected change in the economy, it appears that Debtor's financial circumstances will continue along the same path, or in fact could worsen if Debtor's motel falls further into disrepair due to lack of funds. Debtor does not appear to have sufficient business prospects to re-establish itself on a "firm, sound basis." Both prongs of section 1112(b)(4)(A) have been met; as a result, cause exists for conversion or dismissal of Debtor's case.

Cause also exists under section 1112(b)(4)(J). Local Rule 3016-1(a) requires that a debtor's plan be filed "not later than one hundred eighty (180) days after the entry of the order for relief." Debtor filed its chapter 11 petition on June 29, 2010, but did not file its Disclosure

Statement and Plan until February 16, 2011, 232 days later. At the time UST's Motion was filed, no Disclosure Statement or Plan had been filed in Debtor's case. Because Debtor failed to timely file its Disclosure Statement and Plan and because the late filed Plan was denied confirmation, cause for conversion or dismissal exists under section 1112(b)(4)(J).

Section 1112(b)(2) provides a debtor with the opportunity to avoid conversion or dismissal, if he can make some specific showings. Section 1112(b)(2) states:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that –
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>   (i) for which there exists a reasonable justification for the act or omission; and
>   (ii) that will be cured within a reasonable period of time fixed by the court.

The construction of the statute makes it clear that all of the elements set forth in the statute must be satisfied to protect the debtor from conversion or dismissal. *See Landmark Atlantic*, 2011 WL 831724, at *6 ("All of the elements set forth in Section 1112(b)(2) must be established."). In Debtor's case, section 1112(b)(2)(B) is not met. That section states that the grounds for conversion or dismissal must be other than under paragraph (4)(A); however, the Court found that cause for conversion or dismissal existed under section 1112(b)(4)(A). As a result, the defense set forth in section 1112(b)(2) is not available to Debtor. Debtor's case should be converted or dismissed. The Court finds that dismissal rather than conversion to chapter 7 is in all parties' best interest, as liquidation of Debtor's estate would produce no money for Debtor's unsecured creditors and would simply further delay creditors' collection efforts. Cause exists for

dismissal of Debtor's case, and because dismissal is in the best interests of creditors and the estate, Debtor's case is dismissed.

## CONCLUSION

Debtor's Plan is not feasible; as a result, confirmation of Debtor's Plan is denied. Cause exists under section 1112(b)(4)(A) and (J) for dismissal of Debtor's case; as a result, Debtor's chapter 11 case is dismissed. Creditor's 362 Motion is moot.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**04/01/2011**



Entered: 04/01/2011

David R. Duncan
US Bankruptcy Judge
District of South Carolina